UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-25178-CV-MIDDLEBROOKS
(16-20474-CR-MIDDLEBROOKS)
MAGISTRATE JUDGE REID

ANDY ARMAS,

Movant,

v.

UNITED STATES OF AMERICA,

Respondent.

_____/

# REPORT OF MAGISTRATE JUDGE

## I. Introduction

This Cause is before the Court upon Movant's Motion to Vacate pursuant to 28 U.S.C. § 2255 attacking the constitutionality of his sentences following a guilty plea in Case No. 16-20474-CR-MIDDLEBROOKS.[1]

This matter has been referred to the Undersigned for consideration and report. *See* S.D. Fla. Admin. Order 2019-2. For the following reasons, the Motion should be **DENIED**.

---

[1] This Report uses the citation "[ECF]" to reference docket entry numbers in the instant federal habeas case. Citations to "[CR ECF]" refer to docket entry numbers in the underlying criminal case.

1

## II. Claims

Construing the Motion liberally, consistent with *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Movant raises one claim for relief. Specifically, Movant argues Counsel was ineffective for conceding the Government's loss calculation, which was used to determine the applicable Guidelines range at sentencing.[2]

## III. Pertinent Factual and Procedural Background

The Government charged Movant with one count of conspiracy to commit health care fraud, wire fraud, and mail fraud in violation of 18 U.S.C. § 1349, four counts of mail fraud in violation of 18 U.S.C. § 1341, and one count of conspiracy to defraud the United States and pay health care kickbacks in violation of 18 U.S.C. § 371. [CR ECF No. 29]. The indictment submitted Movant did so by using Marlins Pharmacy, Corp. ("Marlins") and Millenium Pharmacy, Inc. ("Millenium")[3]—two companies Movant was the owner, operator, and president of—to defraud the Medicare program. [*Id.*].

Movant pled guilty to all charges. [CR ECF Nos. 37; 39; 41; 52]. There was no plea agreement. *See* [CR ECF No. 41 at 2]. In the Presentencing Investigation

---

[2] Movant also made a passing remark regarding Counsel's performance during plea negotiations. It was not presented as a claim. To the extent it was an attempt at raising a claim, the Undersigned addressed it and recommends that such a claim be denied.

[3] Movant registered this company with what appears to be a misspelling of the word "Millenium" and, therefore, this Report refers to this company by its registered name. That information is readily accessible and reliable in light of a State-operated website available at http://search.sunbiz.org/Inquiry/CorporationSearch/ByName. *See* Fed. R. Evid. 201.

Report ("PSI"), the offense level was calculated by accepting the base offense value of 7, and the loss estimate as more than $3.5 million, which added 20 points to the offense level due to characteristics of the specific offense. [PSI ¶¶ 21-23]. A 2-point "sophisticated means" enhancement was also recommended in the PSI. [*Id.* ¶ 24]. The PSI further advised a 4-point role enhancement for Movant's involvement as a leader or organizer, raising the offense level's sum to 33 points. [*Id.* ¶ 26]. After reducing 2 points for Movant's acceptance of responsibility [*id.* ¶ 30], the PSI calculated an offense level of 31. [PSI ¶¶ 61-62]. With an offense level of 31 and Movant's criminal history category of I, the applicable Guidelines at sentencing was 108-135 months' imprisonment, according to the PSI. [*Id.*].

The Government filed a sentencing memorandum. [CR ECF No. 45]. The Government's sentencing memorandum argued that "[t]he correct actual and intended loss figure in this case is $5,523,058[.]" [*Id.* at 6]. To reach this estimate, the Government used a two-step calculation. The first step considered the difference between the number of medications that were billed to Medicare and those that were actually purchased. [*Id.*]. The second step used the approximate cost of each missing medication and then multiplied the approximate cost of a medication by the number of missing medications deduced from step one. [*Id.* at 6-7].

Counsel did not challenge the loss amount set forth in the PSI. [CR ECF No. 46]. Instead, Counsel only challenged the sophisticated means and role enhancements. [*Id.*].

At the sentencing hearing, the Court inquired whether there were any other objections to the PSI beyond Counsel's challenge to the sophisticated means and role enhancements. [CR ECF No. 63 at 7]. Counsel explained the government's loss calculations had "changed numerous times" and stated the figure "gradually" shrank, which led him and Movant to accept the current figure submitted. [*Id.*]. However, while Counsel stated they accepted the government's loss calculation, he submitted that a below-guidelines sentence should be considered due to other factors that may have caused inaccuracies with the total loss estimate. [*Id.*]. Later during the sentencing hearing, Counsel again confirmed that he was not challenging the amount of the loss because it was an imprecise science in this case, as the government did not consider inaccurate recordkeeping as a possibility. [*Id.* at 87-88].

The Court found the sophisticated means enhancement applicable and applied only 2 points to the role enhancement instead of the 4 points recommended in the PSI. [*Id.* at 89-90, 97]. Due to the 2-point difference, Movant's Guideline range of imprisonment became 87 to 108 months. [*Id.*]. The government argued that Movant's sentence should remain at the top of the Guidelines. [*Id.* at 90-94]. Although Movant's Counsel again did not challenge the amount loss, he argued the

Court should consider Movant had to pled guilty without a plea agreement due to concerns surrounding the Government's loss estimate as a mitigating sentencing factor. [*Id.* at 95-96]. In Counsel's view, the most onerous sentence the Court should impose was one at the low end of the Guidelines. [*Id.* at 96].

The Court sentenced Movant to 87 months' imprisonment, noting that it was necessary to impose a within-the-Guidelines sentence because the crime was serious and harmed persons who rely on Medicare. [*Id.* at 98]. A below-Guidelines sentence was not appropriate because it would not deter Medicare fraud, which the Court found too common in the Southern District of Florida. [*Id.*]. The Court found a sentence at the bottom of the Guidelines was appropriate. [*Id.*].

Movant appealed. [CR ECF No. 60]. Movant argued as follows:

> (1) the district court clearly erred when it applied a two-level role enhancement because it failed to make a factual finding that there was at least one other participant in Armas's offenses and under his control;
>
> (2) the district court clearly erred when it applied a two-level enhancement for use of sophisticated means because his conduct was not complex or especially intricate and he did not create his pharmacies for the sole purpose of committing fraud;
>
> (3) the district court plainly erred in assessing the total loss amount because it failed to grant him credit for his legitimate prescriptions billed to Medicare; and
>
> (4) he was provided ineffective assistance of counsel during the sentencing and plea phases, which rendered the sentencing hearing unfair.

5

*United States v. Armas*, 712 F. App'x 923, 925 (11th Cir. 2017). The U.S. Court of Appeals for the Eleventh Circuit affirmed in part and vacated in part, requiring the Court to resentence Movant without the two-level role enhancement. *Id.* at 930.

The Eleventh Circuit declined to review the loss assessment. As it pointed out, Movant "did not object to the calculation of losses in the PSI" and "accepted the amount and the guideline range[.]" *Armas*, 712 F. App'x at 929 (internal quotations omitted). The Eleventh Circuit also emphasized Counsel "expressly elected not to challenge" the loss amount. *Id.* at 929. The Eleventh Circuit held the invited error doctrine demonstrated Movant had waived the appealability of the loss amount.[4]

A resentencing hearing was scheduled. [CR ECF No. 81]. Prior to the hearing, Movant's new attorney argued the loss calculation was incorrect. [CR ECF No 80]. He argued the total loss was approximately $1.3 million, not $5.5 million as the Government previously argued and Counsel previously accepted. [*Id.* at 3-4]. The Court declined to revisit the loss amount because the Eleventh Circuit's mandate did not permit the Court to do so. [CR ECF No. 89 at 10]. With the offense level adjusted to 27 and Movant's criminal history category of I [*id.* at 2], the applicable Guidelines range was 70 to 87 months' imprisonment. The Court resentenced Movant to 70

---

[4] The invited error doctrine holds "any error the court may have made" is waived and cannot be reviewed on appeal if "a defendant expressly consents to or affirmatively seeks a district court's decision[.]" *Armas*, 712 F. App'x at 928 (citing *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009)).

months' imprisonment. [CR ECF No. 82]. On appeal, the Eleventh Circuit affirmed the and noted that the Court correctly declined to revisit the loss calculation. *United States v. Armas*, 748 F. App'x 964, 966 (11th Cir. 2018).

### IV. Threshold Issues - Timeliness

The Government does not dispute the timeliness of the instant Motion.

### V. Standard of Review

Section 2255 states in relevant part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution...may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a).

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in

direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232-33 (11th Cir. 2004) (citations and internal quotations omitted). If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**VI. Discussion**

A. <u>Ineffective-Assistance Regarding the Loss Amount</u>

Liberally construed, Movant claims Counsel was ineffective for conceding the loss calculation, which was used to determine the applicable Guidelines range.[5] [ECF No. 9 at 5]. At sentencing, the Court, the PSI, the government, and Counsel all determined a total loss exceeding $3.5 million was a reasonable estimate.

That figure is important. Pursuant to § 2B1.1(b)(1)(J), U.S. Sentencing Guidelines, 18 points are added to the offense level if the fraud caused a total loss of $3.5 million but less than $9.5 million. If more than $1.5 million but less than $3.5 million in losses occurred, 16 points are added to the offense level. U.S.S.G. §

---

[5] To the extent Movant wishes to re-argue that the Court erred in accepting the loss estimate or that Counsel's concession does not qualify as an invited error, such claims were at issue on direct appeal. *See generally Armas*, 712 F. App'x at 929. Therefore, Movant cannot raise such claims in this proceeding. *See, e.g.*, *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). Even if it had not been raised, the merits on such claims could not be addressed in this proceeding because they are procedurally barred and there is no showing Movant is actually innocent or that cause and prejudice exists. *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011); *Hill v. United States*, 569 F. App'x 646, 648 (11th Cir. 2014).

8

2B1.1(b)(1)(I). Because the 18 points were added to the offense level in this case at Movant's resentencing, the offense level of 27 with a criminal history category of I made the applicable Guidelines range 70 to 87 months' imprisonment. If the lower loss amount had been applicable, the applicable Guidelines range would have been 57-71 months' imprisonment.[6]

### i. Deficiency

Movant cannot show Counsel performed deficiently. Courts presume an attorney's performance was adequate. *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). Movant's burden, while "not insurmountable," is quite "heavy." *See id.* "And because counsel's conduct is presumed reasonable, for [Movant] to show that the conduct was unreasonable, [he] must establish that no competent counsel would have" acted similarly. *Id.* at 1315. "There are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 691. Therefore, where an attorney makes strategic choices after considering the law and facts relevant to the plausible options, counsel's performance is "virtually unchallengeable." *Strickland*, 466 U.S. at 690-91.

Counsel understood the difficulties in challenging the loss amount. "[L]oss calculations under the Guidelines are often not calculable 'with precision.'" *United*

---

[6] The PSI also added another 2 points for losses exceeding $1 million pursuant to another provision. [PSI ¶ 23]. As Movant never argued that the losses were less than $1 million, the Court need not consider that calculation.

*States v. Borden*, 269 F. App'x 903, 905 (11th Cir. 2008) (quoting *United States v. Orton*, 73 F.3d 331, 335 (11th Cir. 1996)). So, as long as a sentencing court reaches "a reasonable estimate of the loss" with "the available information" before it, a sentencing court has not erred. *See Orton*, 73 F.3d at 335.

To reach an estimate for purposes of § 2B1.1(b)(1), "loss is the greater of actual or intended loss." U.S.S.G. § 2B1.1, comment. (n.3(A)). "Actual loss" means "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.*, comment. (n.3(A)(i)). "Reasonably foreseeable pecuniary harm" is "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id.*, comment. (n.3(A)(iv)). "Intended loss" is defined as "pecuniary harm that was intended to result from the offense," and "includes intended pecuniary harm that would have been impossible or unlikely to occur." *Id.*, comment. (n.3(A)(ii)). Additionally, intended loss includes pecuniary harm that was unlikely to occur. *Id.*

As already mentioned, Counsel understood the imprecise nature of calculating the loss. [ECF No. 63 at 87-88]. Sure, counsel conceded the loss amount. But he stated that he accepted the Government's figure after the Government changed its loss estimate "numerous times" and did so while understanding the difficulty in proving the estimate was incorrect. [*Id.* at 7, 87-88]. The Government's estimate, as Counsel stated, "gradually" shrank over the "numerous" attempts at negotiating a

10

favorable estimate, indicating this was a factor motivating Counsel. [*Id.* at 7]. Counsel shot for a downward variance by arguing the Government's estimate did not consider issues that could have inflated its loss estimate. [*Id.* at 7, 88]. Viewed together, Counsel's acceptance of the loss estimate and argument for a below-Guidelines sentence was strategically motivated.

Additional record evidence further suggests Counsel's actions were strategic choices. Counsel stated that he and Movant agreed that the loss estimate and Guidelines range were acceptable. [*Id.*]. Attorneys always have a duty of candor to the tribunal. *See, e.g.*, *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). In contrast, Movant has not indicated during the underlying criminal proceedings or in this one that Counsel misspoke by asserting Movant consented to the loss amount. Because Movant failed to challenge Counsel's statement in this proceeding, the Court must accept Counsel's assertions were true. *See, e.g.*, *Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011) (explaining on collateral review a "heightened pleading" requirement exists as opposed to the "notice pleading" standard under Fed. R. Civ. P. 8).

Movant's presumed consent to the loss amount diminishes any argument that Counsel acted deficiently. *See, e.g.*, *Strickland*, 466 U.S. at 691 ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations

11

may not later be challenged as unreasonable[.]"); *Lobosco v. Thomas*, 928 F.2d 1054, 1057 (11th Cir. 1991) (consenting to trial strategy supports counsel's actions were motivated by strategy even though the trial record did not confirm the defendant's consent).

In sum, the record confirms Counsel understood the obstacles to challenging the loss amount, acted pursuant to a strategic decision, and did so with Movant's consent after negotiating a favorable loss estimate. Because competent attorneys would have used Counsel's strategic approach, Movant cannot prove deficiency. *See Chandler*, 218 F.3d at 1315.

### ii. Prejudice

To establish prejudice, Movant must prove a more favorable sentence was reasonably probable. *See, e.g.*, *Strickland*, 466 U.S. at 694. Movant must, therefore, show the Court would have found a reasonable estimate of the loss amount was something less than $3.5 million. *See id.*

The Court had enough information to reasonably estimate well above that figure. At sentencing, Special Agent Lanfersiek testified that he began investigating Marlins and Millenium on suspicion that the pharmacies billed Medicare for prescription drugs that were never purchased. [CR ECF No. 63 at 17]. After confirming Movant owned both pharmacies, Agent Lanfersiek requested wholesale prescription drug companies for invoices or receipts of transactions. [*Id.* at 18]. The

invoices showed records of the type and amount of drugs actually purchased. [*Id.*]. A reconciliation overview, which is a document comparing what was actually purchased against what was billed to the Medicare program, was presented. [*Id.* at 19-20]. The reconciliation overview only considered events from March 2014 through March 2015 with respect to Marlins. [*Id.* at 19]. All of the prescription drugs Marlins billed to Medicare were not considered because it would have been "too voluminous." [*Id.*]. A second reconciliation overview was shown regarding Millenium's billing. [*Id.* at 21-22]. As Millenium began billing Medicare earlier, its reconciliation overview evaluated a longer period of time.

Importantly, Movant controlled the corporate bank accounts for Millenium and Marlins. [*Id.* at 22]. No one else had authority over those accounts. [*Id.*]. Agent Lanfersiek reviewed the payments going into those corporate accounts and observed some of the Medicare payments were sent as checks, which Movant would later cash at a check cashing store. [*Id.* at 22-24]. The check cashing store's records confirmed Movant was the only person cashing checks on behalf of those pharmacies. [*Id.* at 24]. In total, Movant cashed $4,093,184.20 at the check cashing store. [*Id.* at 23].

The pharmacist who prepared both reconciliation overviews testified that she picked the 70 most commonly billed drugs at Millenium and the 45 most commonly billed drugs by Marlins. [*Id.* at 48-49]. According to the pharmacist, Millenium caused a total loss of approximately $4.7 million. [*Id.* at 49]. The loss caused by

13

Marlins was $776,000. [*Id.*]. The pharmacist observed that some of the prescriptions billed were duplicative or were otherwise harmful in dosage or in combination. [*Id.* at 50]. She also observed some medications for chronic diseases would stop without explanation, but the particular patient would continue receiving medications for different medical issues. [*Id.* at 52]. Relatedly, the government argued that Movant purposefully hid his assets by taking *over $4 million* in cash at a check cashing store so that it would more difficult to trace his money. [*Id.* at 79-80] (emphasis added).

As such, there was enough evidence to reasonably estimate that Movant caused a loss exceeding $3.5 million. *See Borden*, 269 F. App'x at 905 (holding a district court did not err where government presented documentary evidence and testimony that the loss exceeded a particular threshold minimum). Movant, therefore, cannot show that challenging the loss amount would have made a difference. *See Strickland*, 466 U.S. at 694 (explaining prejudice means "a probability sufficient to undermine confidence in the outcome").

Of course, because the reconciliation overview did not consider all of the medications Marlins and Millenium billed to Medicare, a more accurate estimate of the actual losses probably would have been higher than what the parties agreed upon. The concession likely favored—and did not prejudice—Movant. *See, e.g., Frederick v. Sec'y, Fla. Dep't of Corr.*, 438 F. App'x 801, 804 (11th Cir. 2011) (holding no prejudice exists where a defendant benefited from counsel's actions).

The losses Movant intended was likely higher than the actual losses to the Medicare program. *See* U.S.S.G. § 2B1.1, comment. (n.3(A)) (showing "intended loss" includes "pecuniary harm that was intended to result from the offense" and "intended pecuniary harm that would have been impossible or unlikely to occur"). This further confirms Counsel's concession benefitted Movant. *See Frederick*, 438 F. App'x at 804. Had counsel challenged the Government's estimate at sentencing, the probability of a different outcome would have been slight. *See Strickland*, 466 U.S. at 693 (explaining prejudice is not met where the error only had "some conceivable effect on the outcome of the proceedings").

Movant's consent to the loss estimate also precludes a showing of prejudice. *See, e.g.*, *Hatcher v. United States*, No. 114CR145WSDJSA1, 2016 WL 11488909, at *6 (N.D. Ga. July 19, 2016), *report and recommendation adopted*, No. 1:14-CR-145-WSD-1, 2018 WL 2455274 (N.D. Ga. June 1, 2018) (consenting to counsel's concession of the loss amount at sentencing diminishes Movant's claims that he was prejudiced).

Viewed together, Movant cannot establish prejudice. And, as previously mentioned, he cannot show Counsel performed deficiently. This claim must be denied.

B. The Statement Suggesting Counsel Acted without Movant's Consent

15

Tucked away in his Memorandum in Support, Movant stated his Counsel "withdr[e]w" from a plea agreement without his permission. [ECF No. 10 at 4]. Movant did not assert this as a separate claim in his Amended Motion. [ECF No. 9]. In fact, as pled, it does not appear Movant attempted to raise this as a claim of ineffective-assistance at all. But to the extent Movant actually attempted to raise an ineffective-assistance claim, he is not entitled to relief. [ECF No. 10].

Habeas proceedings are subject to a heightened pleading standard. *See, e.g.*, *Borden*, 646 F.3d at 810 (explaining on collateral review a "heightened pleading" requirement exists as opposed to the "notice pleading" standard under Fed. R. Civ. P. 8).

Here, any ineffective-assistance claim lacks adequate specificity and clarity. [ECF No. 10 at 4-6]. To begin, Movant's use of the word "withdraw" implied that counsel rescinded a previously accepted offer. *See* BLACK'S LAW DICTIONARY 1739 (9th ed. 2009) (defining "withdraw" as taking back something allowed or retracting one's words). Movant, however, provided no allegations indicating he ever accepted an offer. [*Id.*]. Similarly, the Court cannot construe this as a claim of failure to convey a plea offer because Movant concedes his counsel told him that such an offer had been discussed. [*Id.*]. Movant, therefore, cannot raise a facially sufficient claim with his bare, conclusory, and vague allegations. *See Borden*, 646 F.3d at 810 (explaining courts may summarily dismiss claims that are legally insufficient on

16

their face); *cf. Prada v. United States*, 692 F. App'x 572, 574 (11th Cir. 2017) (explaining evidentiary development is not necessary in a § 2255 proceeding when the underlying claims are conclusory and speculative).

Movant also failed to rebut the Government's contentions. The Government claimed Movant's Counsel denies acting without Movant's consent. [ECF No. 12 at 11]. The Reply fails to assert Counsel acted without Movant's consent, contradicting his initial allegations. [*Id.* at 4-5, 8]. The Reply also does not suggest Counsel unilaterally cancelled an existing plea deal. [*Id.*]. At best, the Reply and its attached affidavit suggest the Government offered 57 months' imprisonment and Counsel advised Movant to wait for a better offer.[7] [*Id.*]. Movant failed to show Counsel acted without Movant's consent in rebuttal based on this record.[8] In sum, to the extent an ineffective-assistance claim had been raised, it should be denied.

---

[7] Movant cannot raise new claims in a Reply, and the Court is under no obligation to consider them. *See, e.g.*, *Herring v. Sec'y, Fla. Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005); *Flynn v. Screws*, No. 11-CV-22765-SEITZ, 2014 WL 10677554, at *25 (S.D. Fla. Nov. 20, 2014), *report and recommendation adopted sub nom. Flynn v. Jones*, No. 11-22765-CIV, 2015 WL 6872515 (S.D. Fla. Nov. 6, 2015). To the extent Movant's Reply suggests he wished he had argued Counsel was ineffective for advising him to decline a favorable plea offer, the claim shall not be considered. *See, e.g.*, *United States v. Martinez*, 83 F.3d 371, 377 n.6 (11th Cir. 1996) (declining to consider arguments raise for the first time in a reply).

[8] Counsel for the Government "always has a duty of candor to the tribunal." *See, e.g.*, *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). And again, Movant is subject to a heightened pleading standard. *See Borden*, 646 F.3d at 810. Movant's conclusory assertion that his Counsel may have acted without his consent, therefore, fails at overcoming the presumption of truth afforded to Counsel for the Government's contrary representations. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808-09 (11th Cir. 2003); *see also Rousseau v. United States*, No. 13-20505-CR, 2019 WL 7484695, at *3 (S.D. Fla. Dec. 2, 2019), *report and*

## VII. Evidentiary Hearing

Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. *See Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).

However, district courts "need not hold a hearing if the allegations are 'patently frivolous,' based upon 'unsupported generalizations,' or 'affirmatively contradicted by the record.'" *Diveroli*, 803 F.3d at 1263 (relying upon *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014)). *Cf. Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (holding that if the record refutes the factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing in a § 2254 context).

Here, Movant cannot show an evidentiary hearing would prove he is entitled to relief. The record and his allegations are sufficient to review this case.

## VIII. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus [or motion to vacate] has no absolute entitlement to appeal, but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253 (c)(1);

---

*recommendation adopted*, No. 18-22449-CIV, 2020 WL 59727 (S.D. Fla. Jan. 6, 2020) (concluding the same in a § 2255 proceeding).

18

*Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253 (c)(2). To merit a certificate of appealability, prisoners must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935-36 (11th Cir. 2001).

In this case, there is no basis to issue a certificate of appealability. If Movant disagrees, he should present his argument to the attention of the District Judge in objections.

## IX. Conclusion

Based on the foregoing, it is recommended that the motion to vacate be **DENIED**. [ECF No. 1]. In addition, an evidentiary hearing should be **DENIED**, and this Court should **NOT ISSUE** a certificate of appealability. Accordingly, this case should be **CLOSED**.

Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo* determination by the District Court Judge of an issue covered in this Report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court Judge except upon grounds of

plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

Signed this 5th day of August, 2020.

_____
UNITED STATES MAGISTRATE JUDGE


cc:    Andy Armas
13619-104
D. Ray James
Correctional Institution
Inmate Mail/Parcels
Post Office Box 2000
Folkston, GA 31537
PRO SE

Emily Gurskis
U.S. Department of Justice
Fraud Section, Criminal Division
1400 New York Avenue, N.W.
Bond Building 8th Floor
Washington, DC 20005
(202) 514-0057
Email: emily.gurskis@usdoj.gov

Noticing 2255 US Attorney
Email: usafls-2255@usdoj.gov